### THE VAL NO. 2.

### THE HARRY R. CONNERS.

No. 17026.

District Court, E. D. New York.

March 6, 1946.

Mahar & Mason, of New York City (Frank Mason, of New York City, of counsel), for libellant.

Purdy & Lamb, of New York City (Edmund Lamb, of New York City, of counsel), for respondent.

Alexander & Ash, of New York City (Edward Ash, of New York City, of counsel), for impleaded respondent.

INCH, District Judge.

Libellant sued the tug Harry R. Conners, owned by the Standard Towing Corporation, for damage to libellant's barge Val No. 2. The owner of the tug impleaded the Russell Brothers Towing Company, Inc., on the theory that it was negligent for permitting the Conners to tow the barge in prevailing weather conditions, that the barge was overloaded etc.

At the outset, there is no evidence in the record on which liability of the impleaded-respondent can be found and the said petition is dismissed.

The real and only issue is between libellant and the tug Conners. This is whether or not libellant has shown by a preponderance of credible testimony that its barge was damaged by negligence on the part of those navigating the tug?

The barge Val No. 2 is a steel oil barge and was loaded with about 200,000 gallons of oil, although not to her full capacity. This sort of barge does not tow well on a hawser in a choppy sea or windy weather. The reasonably prudent manner, under such conditions, is to tow her alongside. It is apparent that this was known to both the bargee and the tug captain.

In the afternoon of January 5, 1944, the tug Conners came down to take in tow the barge at Port Johnson, in the Kill von Kull, on the Jersey side of the Kills, bound for Brooklyn. The sea was choppy, the tide was flood, and there was some wind blowing. The bargee, who had been working on that barge about six years, as the tug Conners came up to the barge which was lying at the Pennsylvania stakes at Port Johnson, asked the captain of the tug

as to how he was going to tow the barge? The captain replied he was going to tow her on a hawser. The bargee immediately told the captain that he would not "advise him to tow the barge that way because the barge was hard to handle. That it dives and sheers and that he would find himself in difficulty". The captain replied, however, "that he thought he could handle the situation all right".

Accordingly, the captain proceeded to put out to the barge a short hawser and bridle which was a part of the tug's equipment, the distance being from the bitts to the bridle splice, about 40 feet. The bridle splice, meaning where the bridle joins the towing hawser, was about the end of the fantail of the tug, the hawser being made fast to the stern towing bitt of the tug. The whole affair was about 50 feet.

Disregarding this plain warning of the bargee as to the advisability of towing the barge in this manner and, although it is evident that the captain of the tug knew he was taking a chance and aside from the condition of the bridle, the tug started to tow the barge. After it had gone only about a mile, with the barge diving to the right and to the left, the hawser parted at the bridle splice and the barge, which was then only 150 feet away from a dock on the shore, sheered to starboard and collided with this dock causing some damage to her starboard bow. Thereupon the Conners took the barge alongside, but soon found that it was too choppy and turned back with the barge to Pier 5, Staten Island.

The various defenses of counsel for the tug do not find support in the evidence. To be sure the tug is not an insurer nor need this decision rest on any inference of fault in view of the direct testimony of the witnesses. On the contrary, libellant has shown by a preponderance of evidence, which includes a fair consideration of the testimony of the captain of the tug himself, that the latter carelessly, in view of the then conditions of the sea and wind and the nature of the barge, and in spite of the warning of the bargee, tried to tow this barge by a hawser which shortly thereafter broke because of the very things feared by the bargee and communicated to the cap-tain, who, nevertheless attempted to try it and as a result of such negligence the barge was somewhat injured.

Libellant is entitled to a decree against the tug and her owner.